IN THE SUPREME COURT OF NORTH CAROLINA

No. 177PA24

Filed 14 August 2026

STATE OF NORTH CAROLINA

v.

TERRY WAYNE NORRIS, JR.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 294 N.C. App. 475 (2024), reversing a judgment entered on 3 August 2022 by Judge Jacqueline D. Grant in Superior Court, Rutherford County, and remanding the case for dismissal. Heard in the Supreme Court on 5 November 2025.

*Jeff Jackson, Attorney General, by Joshua D. Abram, Special Deputy Attorney General, for the State-appellant.*

*Mikayla Mann and Kellie Mannette for defendant-appellee.*

ALLEN, Justice.

In general, state law prohibits individuals with felony convictions from purchasing, owning, or possessing firearms. N.C.G.S. § 14-415.1(a) (2025). While the actual possession of firearms by such individuals violates the statute, they can also violate the statute by constructively possessing firearms. Constructive possession occurs when a person has the intent and capability to maintain control over an item.

Defendant Terry Wayne Norris Jr. was indicted on a charge of possession of a firearm by a felon. At trial, he moved to dismiss the charge, arguing that the State

failed to introduce substantial evidence that he constructively possessed the firearm found in a dresser located three or four steps from the site of his arrest. The trial court denied the motion, and the jury found defendant guilty. The Court of Appeals agreed with defendant and reversed the trial court's judgment.

When considering a motion to dismiss a criminal charge for insufficient evidence, a court must view the evidence in the light most favorable to the State. The Court of Appeals turned this principle on its head by viewing the evidence in the light most favorable to defendant. Accordingly, we reverse the judgment of the Court of Appeals and remand the case.

**I.**

On 11 July 2020, United States Marshals and officers of the Forest City Police Department (FCPD) arrived at 124 Hamilton Street, a house in Forest City, to serve an arrest warrant on defendant for a charge that was later dismissed. Defendant had previously been convicted of multiple felonies.

Law enforcement officers went to 124 Hamilton Street because Detective Dakotah Thomas of the FCPD knew that defendant lived there and had seen him there "multiple times." The same was true of Detective Thomas's partner, Officer Dylan Radford, who had dealt with defendant at that location at various times throughout his roughly five-year career in law enforcement.

Defendant was standing on the front porch of the house as law enforcement vehicles approached. When he saw the officers, defendant "hurriedly" went inside the

house.

The marshals entered the house, apprehended defendant near the front door, and brought him back outside. They advised Detective Thomas and Officer Radford that they had seen marijuana in plain view in the living room.

Defendant's girlfriend, Sherry Renee Ledford, resided at the house with her two children. Detective Thomas was informed that Ms. Ledford "want[ed] to deal with" him specifically. He asked Ms. Ledford for permission to search the residence, and she consented.

A black mailbox with the name "Norris" on it was mounted beside the front door. As officers stepped through the doorway and into the living room, they observed a small bedroom immediately to the right. The bedroom door was open.

Detective Thomas searched the living room, where he noticed packages of marijuana around the sofa. Moving into the kitchen, Detective Thomas recovered a cellular phone with a lock screen that displayed a photograph of defendant and his deceased daughter, Aaliyah Norris.

Officer Radford entered the bedroom, where he observed a plastic dresser against the wall immediately to his right. The dresser contained five translucent gray drawers. It was situated only three or four steps from the front door. Two sets of scales sat on top of it.

In the far corner of the room lay a mattress flanked by two small black nightstands. Elsewhere in the bedroom, a television stood atop a black nine-cube

organizer. A mirror mounted on the wall above the television had a school nametag with "Aaliyah" written on it. A portrait of a little girl hung on one of the bedroom walls. The frame was heart-shaped and decorated with a bow and the letter "A."

Piles of clothes covered the bedroom floor. Some of those clothes were men's clothes. Men's shoes were also present. A laundry basket full of mixed clothing, including men's boxer shorts, sat behind the bedroom door.

Turning his attention to the dresser, Officer Radford discovered that it was not locked or otherwise secured. Opening the second drawer, he found a loaded silver .38 Special revolver lying on a pile of toiletries. The toiletries consisted of hairspray and other feminine products.

Officer Radford also discovered pills in the bedroom and a couple of envelopes with defendant's name on them. At trial, Detective Thomas, who assisted Officer Radford with the bedroom search after Officer Radford found the handgun, recalled finding a piece of paper in the bedroom with defendant's name on it, though he could not remember anything more specific about it. Footage from the officers' body cameras depicted a white envelope on which were handwritten defendant's name and "Bookmarks for Aaliyah Norris." That same footage also depicted an envelope from Rutherford County Schools addressed to "Mr. Terry Norris."

After concluding their search, the officers went outside to speak with Ms. Ledford. She explained that the pills belonged to defendant and that they "kept him calm and helped him sleep." The discussion turned to the handgun discovered in the

bedroom. The officers explained that defendant could not be around the weapon because of his status as a convicted felon. Ms. Ledford claimed that the weapon was hers and denied that defendant lived in the house. She did admit that he occasionally stayed there, however.

A grand jury subsequently indicted defendant for possession of a firearm by a felon in violation of N.C.G.S. § 14-415.1. At trial, defendant twice moved to dismiss the charge for insufficient evidence, once at the close of the State's evidence and again at the close of all the evidence. The trial court denied both motions, and the jury found defendant guilty of the charged offense.[1] The court sentenced defendant to imprisonment for a term of 75 to 102 months.

On appeal, defendant argued that the trial court erred by denying his motions to dismiss. In particular, he maintained that "the State proffered insufficient evidence to establish his constructive possession of the firearm." *State v. Norris*, 294 N.C. App. 475, 477 (2024).

The Court of Appeals began its analysis by noting that "[a] trial court properly denies a motion to dismiss if there is substantial evidence (1) of each element of the offence charged and (2) of the defendant being the perpetrator of such offense. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 477 (cleaned up) (quoting *State v. Gallion*,

---

[1] Defendant had also been indicted for obtaining habitual felon status in violation of N.C.G.S. § 14-7.1. After the jury found him guilty of possession of a firearm by a felon, he pleaded guilty to the habitual felon offense.

282 N.C. App. 305, 334–35 (2022)). The appellate court further observed that, "[w]hen determining whether substantial evidence exists, [a trial] court examines all evidence in the light most favorable to the State, allowing the State every reasonable inference thereon." *Id.*

The Court of Appeals remarked that "the State's theory of [defendant's] possession [of the firearm] rests solely upon constructive possession." *Id.* at 478. It explained that a "determination of constructive possession rests on the totality of the circumstances." *Id.* "Constructive possession is established when an item is not under the defendant's physical custody, but he has knowledge of the item alongside the power and intent to control the item." *Id.* Additionally, "[w]hen the defendant does not have exclusive possession of the location where the firearm is found, the State is required to show other incriminating circumstances in order to establish constructive possession." *Id.* (quoting *State v. Taylor*, 203 N.C. App. 448, 459 (2010)).

Relying on *State v. Rich*, 87 N.C. App. 380 (1987), and this Court's decision in *State v. McLaurin*, 320 N.C. 143 (1987), the Court of Appeals reasoned that, even if one assumes that defendant shared nonexclusive control over the house, "the State failed to present such other incriminating circumstances to substantially link [d]efendant with the gun, to the bedroom, or to the dresser drawer where the gun was found along with the other items therein." *Norris*, 294 N.C. App. at 479–80. In reaching this conclusion, the panel characterized the State's case as dependent on four circumstances:

> (1) [d]efendant was found at the home at the same time as the gun; (2) the mailbox listed [d]efendant's last name; (3) a non-descript and unspecified piece of paper was found inside a tote bag inside the bedroom with [d]efendant's name somewhere on it; and, (4) there were both male and female clothes in the closet where the paper was found.

*Id.* at 480.

Insisting that the facts relied upon by the State "must be considered in totality with all others and not in isolation," the court highlighted evidence that, in its view, undermined the State's argument that defendant constructively possessed the firearm. *Id.* It pointed out, for example, that "[t]he bedroom where the gun was found was decorated and contained numerous items that heavily suggested a female occupant, and the gun was found inside a closed drawer containing only feminine products." *Id.* Moreover, "Ms. Ledford claimed the handgun belonged to her . . . [and] [s]he also testified that the home was rented to her." *Id.* Although defendant's last name appeared on the mailbox, "Ms. Ledford testified [d]efendant's last name was listed on the mailbox because his deceased daughter . . . lived with Ms. Ledford for many years." *Id.* According to the Court of Appeals, "[t]he totality of the evidence [did] not support a conclusion of constructive possession of the gun by [d]efendant." *Id.*

The court also criticized the State's theory that "[d]efendant had 'stashed' the gun in the closed dresser drawer with Ms. Ledford's personal items during the short period he was not being observed by the officers." *Id.* at 481. "[T]he State offer[ed] no evidence tending to show [d]efendant's actions beyond his entering the home," so "[a]ny conclusions concerning [d]efendant's purported actions cannot be inferred from

his simple entry into and exit onto the porch of the home." *Id.* Thus, the State's "stashed" theory "constitutes speculation rather than an inference and does not support a conclusion of substantial evidence." *Id.*

Having determined that the State failed to present substantial evidence of constructive possession, the Court of Appeals reversed the trial court's denial of defendant's motion to dismiss and remanded the case to the trial court for entry of an order of dismissal. *Id.* Although defendant also argued that the trial court committed plain error in its instructions to the jury, the Court of Appeals found it unnecessary to reach that issue. *Id.*

Pursuant to N.C.G.S. § 7A-31, the State petitioned this Court to review whether "the Court of Appeals err[ed] when it held that defendant's motion to dismiss for insufficient evidence of constructive possession should have been granted." We allowed the State's petition for discretionary review.

**II.**

"Whether the State presented substantial evidence of each essential element of the offense is a question of law; therefore, we review the denial of a motion to dismiss de novo." *State v. Tucker*, 380 N.C. 234, 236 (2022) (quoting *State v. Crockett*, 368 N.C. 717, 720 (2016)). A trial court must deny a motion to dismiss if " 'there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense.' " *Id.* at 236–37 (quoting *State v. Powell*, 299 N.C. 95, 98 (1980)). "Substantial

evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *State v. Turnage*, 362 N.C. 491, 493 (2008). It "is the same as more than a scintilla of evidence." *Tucker*, 380 N.C. at 237.

"In reviewing challenges to the sufficiency of evidence, we must view the evidence in the light most favorable to the State, giving the State the benefit of all reasonable inferences. Contradictions and discrepancies do not warrant dismissal of the case but are for the jury to resolve." *State v. Barnes*, 334 N.C. 67, 75 (1993) (citation omitted). "[S]o long as the evidence supports a reasonable inference of the defendant's guilt, a motion to dismiss is properly denied even though the evidence also permits a reasonable inference of the defendant's innocence." *State v. Bradshaw*, 366 N.C. 90, 93 (2012) (quoting *State v. Miller*, 363 N.C. 96, 99 (2009)). On the other hand, "[w]hen the evidence raises no more than a suspicion of guilt, a motion to dismiss should be granted." *Id.* (quoting *Miller*, 363 N.C. at 99).

"If the evidence presented is circumstantial, the court must consider whether a reasonable inference of [the] defendant's guilt may be drawn from the circumstances." *Barnes*, 334 N.C. at 75. "In making this determination, a court 'is to consider all evidence actually admitted, competent or incompetent, which is favorable to the State, disregarding [the] defendant's evidence unless favorable to the State.' " *Tucker*, 380 N.C. at 237 (quoting *State v. Baker*, 338 N.C. 526, 558–59 (1994)). "[If] the court decides that a reasonable inference of [the] defendant's guilt may be drawn from the circumstances, then it is for the jury to decide whether the facts, taken singly

or in combination, satisfy it beyond a reasonable doubt that the defendant is actually guilty." *Barnes*, 334 N.C. at 75–76 (cleaned up).

## III.

"To convict [a] defendant of possession of a firearm by a felon the [S]tate must prove that [the] defendant (1) was previously convicted of a felony and (2) subsequently possessed a firearm." *Bradshaw*, 366 N.C. at 93 (citing N.C.G.S. § 14-415.1(a) (2011)). "It is well established that possession may be actual or constructive." *Id.*

In his brief to this Court, defendant does not dispute that he was a convicted felon at the time of his arrest. Likewise, he expressly concedes that, at a minimum, he was "an occasional overnight guest [at the house] and therefore [was] considered to have nonexclusive possession" of the same. Consequently, since the State proceeded on a theory of constructive possession, the only issue for this Court is whether the State presented substantial evidence that defendant constructively possessed the firearm.

"Constructive possession of contraband material exists when there is no actual personal dominion over the material, but there is an intent and capability to maintain control and dominion over it." *State v. Brown*, 310 N.C. 563, 568 (1984). If the defendant had sole control over the place where the contraband was found, then the analysis can be relatively straightforward. If the defendant shared control of the location with another person, however, "the State must show other incriminating

circumstances sufficient for the jury to find [that the] defendant had constructive possession." *Miller*, 363 N.C. at 99.

"Whether incriminating circumstances exist to support a finding of constructive possession is a fact-specific inquiry." *State v. Chekanow*, 370 N.C. 488, 496 (2018). In *Chekanow*, this Court set out five factors for courts to consider when evaluating whether sufficient evidence exists of incriminating circumstances in constructive possession cases:

> (1) the defendant's ownership and occupation of the property . . . ; (2) the defendant's proximity to the contraband; (3) indicia of the defendant's control over the place where the contraband is found; (4) the defendant's suspicious behavior at or near the time of the contraband's discovery; and (5) other evidence found in the defendant's possession that links the defendant to the contraband.

*Id.*

Because "[n]o one factor controls, . . . courts must consider the totality of the circumstances." *Id.* We therefore consider the evidence in this case corresponding to each of the *Chekanow* factors.

## A.  Ownership and Occupation

The State's evidence of ownership and occupation included the mailbox with the name "Norris" beside the front door of the house. Detective Thomas testified that he knew the house to be defendant's home and had seen him there "multiple times." Likewise, Officer Radford testified that he knew the house to be defendant's residence and had seen defendant there on multiple occasions. As officers approached the house

to arrest defendant, he rushed into the house without first knocking on the door or otherwise obtaining permission to enter the premises.

Other evidence tended to show that defendant shared not only the house but also the bedroom with Ms. Ledford. In speaking with law enforcement immediately following defendant's arrest, Ms. Ledford initially denied that defendant lived at the address but conceded that he stayed there sometimes. Detective Thomas observed men's clothes scattered throughout the bedroom. He also recalled seeing men's shoes there. Ms. Ledford admitted that pills found in the bedroom belonged to defendant, who used them to help him sleep. The officers found an envelope with defendant's name on it and a separate piece of mail addressed to defendant. When viewed together and in the light most favorable to the State, as it must be, the evidence introduced by the State amounted to substantial evidence that defendant shared nonexclusive possession of the house and bedroom with Ms. Ledford.

In determining otherwise, the Court of Appeals noted that Ms. Ledford claimed that she rented the house and that "[t]he décor and items in the bedroom itself alongside the [female] contents of the closed drawer all heavily refute the inference [that] [d]efendant was more than an occasional occupant of the bedroom." *Norris*, 294 N.C. App. at 480. The court also referenced Ms. Ledford's testimony that defendant's last name appeared on the mailbox "because his deceased daughter, whose last name was also 'Norris,' lived with Ms. Ledford for many years." *Id.*

The Court of Appeals erred in its approach. To begin with, even if defendant

stayed at the house only occasionally, that fact alone would not preclude a finding of nonexclusive possession. Defendant admits as much in his brief to this Court, conceding that "whether or not he lived there was not a determinative factor in the analysis on constructive possession as he was minimally an occasional overnight guest."

Furthermore, the Court of Appeals contravened our precedent by basing its decision on evidence unfavorable to the State. As explained above, when reviewing a motion to dismiss for insufficient evidence, a court must "consider all evidence actually admitted, competent or incompetent, which is favorable to the State, *disregarding defendant's evidence unless favorable to the State." Tucker*, 380 N.C. at 237 (emphasis added) (quoting *Baker*, 338 N.C. at 558–59).

The logic of this rule is obvious if one remembers that trial courts are not allowed to weigh the evidence when deliberating on motions to dismiss for insufficient evidence. *See State v. Malloy*, 309 N.C. 176, 178 (1983) ("In considering such motions, the trial court is concerned only with the sufficiency of the evidence to take the case to the jury and not with its weight."). There is no point in asking a court to consider contradictory evidence if it lacks the power to resolve the contradiction.

It follows that evidence unfavorable to the State, such as Ms. Ledford's claim that the "Norris" on the mailbox referred to defendant's daughter, did not provide the trial court with grounds for dismissing the charge against defendant. "Contradictions and discrepancies [in the evidence] do not warrant dismissal of the case but are for

the jury to resolve." *Barnes*, 334 N.C. at 75. The jury could have concluded that Ms. Ledford's testimony was not credible and that defendant's name appeared on the mailbox because, as Detective Thomas and Officer Radford testified, he lived at 124 Hamilton Street. The trial court properly left it to the jury to resolve conflicts in the evidence. The Court of Appeals impermissibly resolved those conflicts in defendant's favor.

## B. Proximity to the Contraband

"[I]n addressing a defendant's proximity to the contraband, this Court considers proximity in terms of space and time." *Chekanow*, 370 N.C. at 497. The bedroom that defendant shared with Ms. Ledford was situated immediately on the right as officers entered the front door. The unlocked dresser in which Officer Radford found the firearm was located only three or four steps from the front door. Thus, when defendant rushed inside the house as officers approached, the dresser was within easy reach. Inasmuch as federal marshals arrested defendant near the front door, it appears that he remained close to the dresser after entering the house. Hence, "in terms of space and time," defendant was sufficiently close to the firearm to support a finding of constructive possession.

This Court's decision in *Bradshaw* confirms our application of the proximity factor. There, the charges against the defendant included possession of a firearm by a felon. *Bradshaw*, 366 N.C. at 91–92. The charges resulted from a search of a residence where at least two men other than the defendant had been known to live.

*Id.* Officers discovered cocaine in one of the bedrooms and a rifle in the closet of that same bedroom. *Id.* at 91. Various pieces of evidence linked the defendant to the bedroom, such as "photographs, a Father's Day card, a cable bill, a cable installation receipt, and a pay stub." *Id.* at 90. Some of the evidence appeared to place the defendant in the bedroom two days before the search. *Id.* at 96. Although the defendant was absent when the search occurred, this Court held that "evidence placing the defendant in the . . . bedroom within two days of the search provides a sufficient link between [the] defendant and the contraband to survive a motion to dismiss." *Id.* at 97.

In this case, the State presented evidence showing that defendant was close to the handgun's location. Moreover, unlike the defendant in *Bradshaw*, defendant was present when the search took place; indeed, he was apprehended just a few feet away from the dresser containing the firearm. If the evidence in *Bradshaw* sufficiently established the spatial and temporal proximity needed for constructive possession, then so does the evidence introduced in this case. *See also State v. Baxter*, 285 N.C. 735 (1974) (holding that sufficient evidence existed of defendant's proximity to marijuana found in the bedroom that he shared with his wife, even though officers had not seen the defendant at the apartment during the preceding week and the defendant was absent at the time of the search).

## C. Indicia of Control

"[A] defendant's opportunity to place contraband in the place where it was

found is additional indicia of control." *Chekanow*, 370 N.C. at 497. The State presented substantial evidence that defendant had the opportunity to put the firearm in the bedroom dresser: upon seeing law enforcement approach, defendant hurried into the house; he was arrested just a few steps away from the dresser; as Officer Radford testified, the dresser was not "secured or locked in any way"; and the firearm was not under anything but was "laying right on top" when Officer Radford opened the drawer.

In *Chekanow*, we cited *State v. Brown*, 310 N.C. 563 (1984), for the principle that the opportunity to put contraband in the place where it was found can be evidence of control. *Chekanow*, 370 N.C. at 499 (citing *Brown*, 310 N.C. at 569). In *Brown*, police officers arrested the defendant after finding him standing a few inches away from a table on which they observed cocaine and drug-related paraphernalia. 310 N.C. at 564–65. The arrest took place in an apartment allegedly leased by the defendant's brother. *Id.* at 565. The defendant was subsequently convicted of manufacturing a controlled substance by packaging and repackaging cocaine. *Id.* at 564–65.

In the defendant's appeal to this Court, we noted that the State had to rely on the doctrine of constructive possession "because the evidence d[id] not reveal that [the] defendant was in the actual physical possession of the drugs or the related paraphernalia." *Id.* at 568. Furthermore, because the defendant did not exclusively possess the premises, "constructive possession of the contraband materials [could] not

be inferred without other incriminating circumstances." *Id.* at 569. We nonetheless upheld the defendant's conviction inasmuch as "there [were] circumstances other than [the] defendant's proximity to the contraband materials which tend[ed] to buttress the inference that [the] defendant was the person engaged in the manufacture of cocaine." *Id.* Specifically, the State presented evidence showing that the defendant (1) had a key to the apartment, (2) had $1,700 cash in his pockets at the time of his arrest, and (3) "had been under surveillance by the police for some time and on every occasion that police observed him, he was at [the apartment] rather than his claimed residence." *Id.* at 569–70.

Here, the evidence of control aside from defendant's proximity to the firearm is plainly sufficient under *Brown*. Though neither officer testified to finding a key to the house on defendant's person, both Detective Thomas and Officer Radford testified that defendant lived at 124 Hamilton Street. The mailbox mounted beside the front door had defendant's—not Ms. Ledford's—last name on it. The presence of defendant's sleeping pills, an envelope with defendant's name on it, a piece of mail addressed to defendant, and men's clothing in the bedroom constitute further evidence that defendant exercised control over the firearm's location.

In his brief to this Court, defendant argues that the evidence of control in this case must be deemed insufficient under *State v. McLaurin*, 320 N.C. 143 (1987). There, a jury found the defendant guilty of possession of drug paraphernalia after officers searched her residence and found a set of scales in the kitchen, a vial bearing

traces of cocaine in the pocket of a man's overcoat hanging in the living room closet, a baggie bearing traces of cocaine on a bar between the living and dining rooms, and "[a] box containing a spoon, eighteen small tinfoil squares, and a plastic bag . . . in a drawer full of children's clothing in a bedroom apparently occupied by children." *McLaurin*, 320 N.C. at 144.

This Court determined that the defendant's control over the premises "was patently nonexclusive" in that two men "had both been observed entering and leaving the day of the search, there was no evidence that defendant was so observed, and the presence of children's and adult male clothes in closets and bureaus indicated that [the] defendant did not reside there alone." *Id.* at 146. Additionally, the defendant and one of the men shared the same last name, and the house contained photographs of that man and the defendant. *Id.* at 145.

Given the evidence of nonexclusive possession in *McLaurin*, we concluded that the defendant's constructive possession of the drug paraphernalia could not be inferred "without other incriminating circumstances." *Id.* at 146 (quoting *Brown*, 310 N.C. at 569). Since "there was no evidence of other incriminating circumstances linking [the defendant] to [the contraband]," we held that "her control was insufficiently substantial to support a conclusion of her possession of the seized paraphernalia." *Id.* at 147. We thus reversed the judgment of the Court of Appeals upholding the defendant's conviction. *Id.*

According to defendant, *McLaurin* governs the outcome in this case because

there, "[e]ven though the investigation yielded . . . ample evidence [that] the defendant resided in the home, this Court did not consider any of this to be 'incriminating circumstances' linking her to the items that were found in a drawer that did not contain her belongings, in a room she did not occupy." Defendant points to Officer Radford's testimony that the dresser drawer containing the handgun "was full of 'lady items, hairspray, different things, stuff like that.' "

Although *McLaurin* bears a superficial resemblance to this case, the evidence there differs materially from the evidence introduced here. Most importantly, the *McLaurin* defendant was absent during the search of her residence. Thus, unlike defendant, she did not dart inside when officers arrived and was not apprehended near contraband. Similarly, none of the contraband seized in *McLaurin* was discovered in the defendant's bedroom, whereas Officer Radford discovered the handgun in the bedroom that defendant shared with Ms. Ledford. In short, the evidence in *McLaurin* did not establish an "opportunity to place contraband in the place where it was found" comparable to the one supported by the evidence in this case. *See Chekanow*, 370 N.C. at 497.

In its opinion reversing the trial court's judgment, the Court of Appeals concluded that the facts of this case are closer to *McLaurin* than to *State v. Rich*, 87 N.C. App. 380 (1987). *Norris*, 294 N.C. App. at 479–81. In *Rich*, the Court of Appeals held that evidence of incriminating circumstances was sufficient to allow the jury to find constructive possession of cocaine where "[t]he evidence showed that [the]

defendant was present on the premises when the cocaine was found, that women's clothes and undergarments were in the room and in the dresser where the cocaine was found, and that letters with [the] defendant's name on them were also found in the room." 87 N.C. App. at 382.

The Court of Appeals attempted to distinguish *Rich* from this case on two grounds. First, "[u]nlike in *Rich*, the contraband was not found in a closed drawer with items that coincide with [d]efendant's sex." *Norris*, 294 N.C. App. at 480 (citing *Rich*, 87 N.C. App. at 382–83). Second, "[w]hile the agents in *Rich* found letters addressed to the defendant, including an insurance policy listing defendant as the resident, the only comparable evidence is a non-descript and unspecified piece of paper that had [d]efendant's name somewhere on it, and that paper is not in the record." *Id.*

While Officer Radford did find feminine products in the dresser drawer, that fact alone is not determinative. It must be viewed alongside the many pieces of evidence indicating that defendant occupied the bedroom and the evidence of his proximity to the dresser shortly before Officer Radford discovered the handgun. The Court of Appeals also seems not to have been aware of the body camera footage of the envelope with defendant's name on it and the piece of mail addressed to defendant.

Interestingly, *Rich* itself expressly distinguishes its own facts from those of *McLaurin*. One of the differences emphasized is that the *McLaurin* defendant "apparently was not present at the time the paraphernalia was found" and "[t]here

was no evidence that she had entered or left the premises at all on the day of the search." *Rich*, 87 N.C. App. at 383. Of course, defendant was present when Officer Radford found the handgun, and he had entered the house at 124 Hamilton Street mere moments before that discovery. On balance, then, *Rich* cannot sustain the Court of Appeals' decision in this case.

**D. Suspicious Behavior**

The evidence before the trial court also provides reason to believe that defendant behaved suspiciously "at or near the time of the contraband's discovery." *See Chekanow*, 370 N.C. at 496. Defendant rushed inside when he saw law enforcement officers approaching the house, and federal marshals arrested him just a few feet away from the unlocked dresser in which Officer Radford found the handgun.

The Court of Appeals discounted this evidence of suspicious conduct because "the State offer[ed] no evidence tending to show [d]efendant's actions beyond his entering the home." *Norris*, 294 N.C. App. at 481. According to the court, this evidence was insufficient to support the State's theory that defendant " 'stashed' the gun in the closed dresser drawer with Ms. Ledford's personal items during the short period he was not being observed by the officers." *Id.* The Court of Appeals concluded that "[d]efendant's purported actions cannot be inferred from his simple entry into and exit onto the porch of the home." *Id.*

In a sense, we agree. The State would have no case if it could show nothing

more than that defendant entered the house and shortly thereafter returned to the front porch. The problem is that the Court of Appeals viewed this evidence in isolation. As we have explained, "[a] finding of constructive possession requires a totality of the circumstances analysis." *Chekanow*, 370 N.C. at 493.

This Court's treatment of the suspicious behavior factor in *Chekanow* illustrates the point. The defendants in that case faced criminal charges over twenty-two marijuana plants "found growing on a remote part of the property [the] defendants owned and occupied." *Id.* at 491–92. One of the defendants "directed an 'unfortunate gesture' at the clearly marked State Highway Patrol helicopter as it flew over her property." *Id.* at 498. She then "appeared to flee the premises . . . as the helicopter hovered to investigate the possible field of marijuana." *Id.* at 498–99.

By themselves, these two actions did not provide substantial evidence that the *Chekanow* defendants were guilty of drug-related offenses. Nonetheless, this Court held that there was sufficient evidence of constructive possession. We reasoned that "a jury could reasonably infer that [the] defendants knowingly possessed the marijuana plants" based on

> the State['s] . . . evidence of [the] defendants' ownership of the property on which the plants were growing, [the] defendants' reasonable proximity to the growing marijuana plants, [the] defendants' ability to control access to that portion of the property via a fence and sole entry point, one [of the] defendant[s'] recent maintenance of the area where the plants were found, the presence of [the] defendants' chickens and their chicken coop in the area where the plants were found, one [of the] defendant[s'] suspicious behavior—the gesture and flight—before the

discovery of the plants, and the discovery of equipment on [the] defendants' property that could have been used to cultivate the plants.

*Id.* at 500.

The Court of Appeals should have viewed the evidence of defendant's suspicious behavior alongside the evidence of the other *Chekanow* factors. When considered together with evidence demonstrating defendant's occupation of the house, proximity to the weapon, and control of the premises, the suspicious conduct by defendant supports an inference—not mere speculation—that he rushed inside the house to hide the firearm.

### E. Other Evidence Found in Defendant's Possession Linking Defendant to Contraband

In addressing this factor in its principal brief to this Court, the State argues that the placement of the firearm in an unlocked dresser easily accessible to Ms. Ledford's children "is further evidence that [d]efendant stashed the gun." We do not regard this circumstance as "additional evidence found in defendant's possession which links . . . defendant to the contraband." *See Chekanow*, 370 N.C. at 499. In *Chekanow*, we cited as an example of such evidence the $1,700 in cash discovered on the defendant's person in *Brown*. *Id.* (citing *Brown*, 310 N.C. at 569). Similarly, in *State v. Spencer*, 281 N.C. 121 (1972), "the Court considered in its sufficiency analysis the fact that officers found marijuana seeds in the defendant's bedroom at the same time marijuana plants were found in a dilapidated shed located twenty yards behind defendant's home." *Chekanow*, 370 N.C. at 499 (citing *Spencer*, 281 N.C. at 129–30).

Unlike the additional evidence in *Brown* and *Spencer*, the State's "further evidence" does not consist of other items found on the accused or in his possession. Hence, it does not qualify for consideration under the fifth *Chekanow* factor. The absence of other evidence is hardly fatal in this case, however. *See id.* at 496 ("No one factor controls, and courts must consider the totality of the circumstances."). When taken together and viewed in the light most favorable to the State, the evidence pertaining to the other *Chekanow* factors demonstrates the existence of "incriminating circumstances sufficient for the jury to find [that] defendant had constructive possession" of the handgun discovered by Officer Radford. *See Miller*, 363 N.C. at 99.

The trial court correctly determined that substantial evidence supported each element of the charge against defendant. For this reason, the Court of Appeals erred in reversing the trial court's denial of defendant's motion to dismiss for insufficient evidence.

## IV.

The judgment of the Court of Appeals is reversed. We hereby remand this case to the Court of Appeals for consideration of any remaining issues on appeal.

REVERSED AND REMANDED.